Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[1] RAMON DIAZ ORTIZ,<br>　　Aka "Mon,"<br>[2] ALEX R. VEGA TORRES,<br>　　Aka "Teso,"<br>[3] HERMES SALCEDO PEÑA,<br>　　Aka "Cito,"<br>[4] ABRAHAM BETANCES RODRIGUEZ,<br>　　Aka "Abraham El Chiquito,"<br>[5] ADA VILLANUEVA MORALES,<br>　　Aka "Melasa,"<br>[6] PEDRO N. ILLAS PELLOT,<br>　　Aka "Nesti,"<br>[7] ABDIEL ILLAS PELLOT<br>　　Aka "Adi,"<br>Defendants. | INDICTMENT<br><br>Criminal No. 99-306 (PG)<br><br>(TWO COUNTS)<br><br>Violations:<br><br>Title 21, USC, Section 841(a)(1)<br>Title 21, USC, Section 846<br>Title 21, USC, Section 952(a)<br>Title 21, USC, Section 963 |

THE GRAND JURY CHARGES:

### COUNT ONE

From on or about a date not later than the summer of 1991, the exact date to the grand jury unknown, until on or about not earlier than April of 1998, the exact date to the grand jury unknown, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] RAMON DIAZ ORTIZ,
Aka "Mon,"
[2] ALEX R. VEGA TORRES,
Aka "Teso,"
[3] HERMES SALCEDO PEÑA,
Aka "Cito,"
[4] ABRAHAM BETANCES RODRIGUEZ,
Aka "Abraham el Chiquito,"
[5] ADA VILLANUEVA MORALES,
Aka "Melasa,"

Exhibit B      1

INDICTMENT
United States v. Ramon Diaz Ortiz, et al
Page 3

---

packages for subsequent sale at drug points.

3. It was a further part of the conspiracy that the defendants and co-conspirators would use residences and other locations in order to store and package the cocaine and marihuana.

4. It was a further part of the conspiracy that the defendants and co-conspirators would sell packaged quantities of cocaine and marihuana in small quantities to customers at drug points.

5. It was a further part of the conspiracy that the defendants and co-conspirators would sell wholesale quantities of cocaine and marihuana to different individuals for subsequent distribution.

6. It was a further part of the conspiracy that the defendants and their co-conspirators would have different roles and would perform different tasks in furtherance of the conspiracy.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of this conspiracy and to effect and accomplish the objects of the same, one or more of the conspirators committed, in Puerto Rico, and elsewhere, among others, the following overt acts:

1. At divers times between the times alleged, the defendants and co-conspirators, and others to the grand jury known and unknown, did possess with intent to distribute and did distribute controlled substances, to wit, cocaine and marihuana, which were sold to customers in one or more drug points for substantial financial gain or profit.

2. At divers times between the times alleged, the defendants and co-conspirators, and others to the grand jury known and unknown, possessed, brandished and used firearms, as defined in Title 18, United States Code, Section 921(a)(3), using them to provide protection for

INDICTMENT
United States v. Ramon Diaz Ortiz, et al
Page 5

---

7. On or about July 6, 1997, at the Burger King, Aguadilla Shopping Center, Aguadilla, Puerto Rico, co-conspirators **Ramon Diaz Ortiz Aka "Mon," Hermes Salcedo Peña Aka "Cito," and Alex R. Vega Torres Aka "Teso,"** for the purpose of maintaining absolute control of the drug operation described above, did undertake the murder of Jose Hernandez Jimenez Aka "Chelo."

8. On or about December 6, 1995, at the car wash located at the Aguadilla Shopping Center, **Samuel Acevedo Muñiz Aka "Sammy Segueta," Aka "Sammy Big Boy,"** possessed with intent to distribute approximately one (1) kilogram of cocaine.

9. On or about December 19, 1995, at the car wash located at the Aguadilla Shopping Center, **Samuel Acevedo Muñiz Aka "Sammy Segueta," Aka "Sammy Big Boy,"** possessed with intent to distribute approximately one (1) kilogram of cocaine.

All in violation of Title 21, United States Code, Section 846.

### COUNT TWO

From on or about a date not later than the summer of 1995, the exact date to the grand jury unknown, until on or about not earlier than April of 1998, the exact date to the grand jury unknown, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this Court,

[1] **RAMON DIAZ ORTIZ,**
Aka "Mon," and
[2] **ALEX R. VEGA TORRES,**
Aka "Teso,"

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[3] HERMES SALCEDO PEÑA<br>a.k.a. Cito,<br>Defendant. | Criminal No. 99-306 (PG)<br><br>Received + Filed<br>February 26, 2001<br>4:20 PM<br>ML |

PLEA AGREEMENT

TO THE HONORABLE COURT:

COMES NOW the United States of America, by and through its attorneys, Guillermo Gil, United States Attorney for the District of Puerto Rico; Jorge A. Vega-Pacheco, Assistant U.S. Attorney, Chief, Criminal Division, David Rivera, Assistant U.S. Attorney for said District, and the defendant, Hermes Salcedo Peña, and the defendant's counsel, Ramon Garcia Garcia, pursuant to Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure, and state to this Honorable Court, that they have reached an agreement, the terms and conditions of which are as follows:

1.  The defendant, Hermes Salcedo Peña (hereinafter "the defendant"), agrees to plead guilty to Count One of the pending indictment. Count One charges that the defendant, knowingly, willfully, unlawfully, and intentionally, combined, conspired, confederated and agreed with co-defendants and with divers other persons to commit an offense against the United States, to wit, to knowingly and intentionally possess with the intent to distribute and distribute multi-kilogram quantities of controlled substances, that is to say, in excess of five (5) kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance; and in excess of one hundred (100) kilograms of

Exhibit C    10

Plea Agreement
U.S.A. v. Hermes Salcedo Pena
Criminal No. 99-306 (PG)
Page 4

    d. therefore, assuming application of the above Sentencing Guidelines, defendant's adjusted base offense level as to Count One is level THIRTY-SIX (36).

    e. the parties agree that no other guideline provisions, adjustments or departures are warranted or applicable.

    f. the parties agree that a sentence of two hundred and twenty-eight (228) months would be appropriate in the applicable guideline range.

    g. the parties also agree that the sentence to be imposed is to be served concurrently with any sentence previously imposed.

    h. The parties do not stipulate any assessment as to the defendant's criminal history category.

    j. The United States reserves its right of allocution at the sentencing hearing.

    9. ~~Defendant Hermes Salcedo Peña hereby waives any right to appeal any sentence imposed pursuant to this plea agreement.~~ *[initialed]*

    10. Defendant, Hermes Salcedo Peña is fully aware that the Court is not bound by this plea agreement, including but not limited as to: sentencing guidelines calculations or stipulations.

    11. Whether any party has breached any provision of this plea agreement, if contested, shall be determined by the Court in an appropriate proceeding at which the defendant's and the United States' disclosures and documentary evidence shall be admissible and at which the contested party shall be required to establish a breach of this plea agreement by a preponderance of the evidence.

Exhibit D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA   \*

       vs.   \*   CR. NO. 99-306(PG)

HERMES SALCEDO PENA   \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CHANGE OF PLEA

The above-captioned cause came on to be heard before the HONORABLE JUAN PEREZ GIMENEZ, United States District Court Judge for the District of Puerto Rico on February 26, 2001.

BOABDIL VAZQUETELLES, JR

P.O. BOX 11850, SUITE 236

SAN JUAN, PUERTO RICO 00922-1850

(787) 250-8507 - 783-6569

Exhibit D    19

1  maximum penalty provided by law is minimum ten years and
2  maximum of life.
3             THE DEFENDANT: Yes.
4             THE COURT: A fine of up to four million
5  dollars, a term of supervised release of at least five
6  years and a one hundred dollar special monetary
7  assessment. Do you understand that?
8             THE DEFENDANT: Yes.
9             THE COURT: Are you presently serving any
10 other sentence?
11            THE DEFENDANT: Yes.
12            THE COURT: You are serving a sentence in
13 State Court?
14            THE DEFENDANT: Yes.
15            THE COURT: What is the amount? What is the
16 sentence?
17            THE DEFENDANT: Six years.
18            THE COURT: Now, let me explain to you that
19 the sentence in this case I can impose it concurrently or
20 consecutively to the sentence you are presently serving.
21 If I impose it concurrently, that will mean then that
22 both sentences would be running at the same time. If I
23 impose it consecutively, it will mean that you would
24 first have to extinguish the state sentence and only then
25 would this sentence start to run. Do you understand that?

Exhibit E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA   \*

       vs.   \*   CR. NO. 99-306(PG)

HERMES SALCEDO PENA   \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FOR SENTENCE

The above-captioned cause came on to be heard before the HONORABLE JUAN PEREZ GIMENEZ, United States District Court Judge for the District of Puerto Rico on August 28, 2001.

BOABDIL VAZQUETELLES, JR

P.O. BOX 11850, SUITE 236

SAN JUAN, PUERTO RICO 00922-1850

(787) 250-8507 - 783-6569

Exhibit E   46

6

```
 1         Therefore, it is the judgment of this court that the
 2    defendant is hereby committed to the custody of the
 3    Bureau of Prisons to be imprisoned for a term of two
 4    hundred and twenty-eight months. Having considered his
 5    financial condition a fine is not imposed. Upon release
 6    from confinement, he shall be placed on supervised
 7    release for a term of ten years pursuant to Title 18,
 8    United States Code, Section 3553 A1A2A,B,C & D, and under
 9    the following conditions:  He shall not commit another
10    Federal, State or local crime and shall observe the
11    standard conditions of supervised release recommended by
12    the Sentencing Commission and adopted by this court. He
13    shall not unlawfully possess any controlled substances
14    and refrain from possessing firearms, destructive devices
15    or other dangerous weapons. He shall refrain from any
16    unlawful use of a controlled substance and he shall
17    submit to one drug test within fifteen days of release on
18    supervision for use of a controlled substance and
19    thereafter as required by the probation officer. If any
20    such sample detects substance abuse he shall participate
21    in a substance abuse treatment program arranged and
22    approved by the probation officer until duly discharged
23    by authorized program personnel with the approval of the
24    probation officer. A special monetary assessment in the
25    amount of one hundred dollars is imposed and I have to
```

52

1   advise you that you can appeal your conviction if you
2   believe that your guilty plea was somehow unlawful or
3   involuntary or there was some other fundamental defect in
4   the proceedings that was not waived by your guilty plea.
5   You also have a statutory right to appeal your sentence,
6   particularly if you think that the sentence is contrary
7   to law. However, a defendant may waive those rights as
8   part of the plea agreement. You have entered into a plea
9   agreement which waives some or all of your rights to
10  appeal the sentence itself. Such waivers are generally
11  enforceable but if you believe the waiver is
12  unenforceable you can present that theory to the
13  Appellate Court. With few exceptions, any notice of
14  appeal must be filed here in the District Court within
15  ten days after the judgment is entered and if you are
16  unable to pay for the cost of the appeal, you may apply
17  for leave to appeal in forma pauperis. That is the
18  sentence of the court. The court recommends to the Bureau
19  of Prisons that if at all possible the defendant be
20  designated to serve this sentence within the State of
21  Florida and that in view of the evidence on record and
22  his statement to the effect that he has used drugs in the
23  past, that whichever institution is designated, allow the
24  defendant to avail himself of any substance abuse
25  treatment program in the institution. Anything else at

8

```
 1    this time?
 2                 MR. GARCIA: Yes, Your Honor, we wish that
 3    this sentence be concurrent to any other sentence that he
 4    is serving at this point, Your Honor.
 5                 THE COURT: The court imposes this sentence
 6    concurrent to any other sentence he is presently serving.
 7                 MR. GARCIA: That is all, Your Honor.
 8                 THE COURT: I want to advise the Marshal's
 9    service that according to the information I have in the
10    pre-sentence report there is a warrant outstanding for
11    his arrest out of New York City and he pled guilty in a
12    case there and he never appeared to his sentence, just so
13    the Marshal is aware of that. Thank you. You may
14    withdraw.
15                 MR. RIVERA: Thank you, Your Honor.
16                 (Whereupon the hearing was terminated)
17
18
19
20
21
22
23
24
25
```

54

1       That since Sammy was Waldy's partner, they sold
2 each other stuff. Sammy had given him permission in order
3 for him to get up there, too.
4       To set up two or three pushers for Waldy's stuff
5 at Muñecas while we were selling Sammy's stuff there, too.
6 Every once in a while Sammy would run out of stuff and
7 Waldy would supply us.
8 Q    And was Samuelito in charge of those sellers who were
9 selling Waldy's material at Muñecas?
10 A    Yes, that is so.
11 Q    What about Cito? How long have you known Cito?
12 A    I've known Cito for 18 years.
13 Q    Almost your whole life. Is it fair to say you grew up
14 together?
15 A    Since I got to Aguadilla.
16 Q    And since when do you know that he became involved in
17 the distribution of narcotics in Muñecas?
18 A    Well, he just started selling when he came from the
19 United States, because he had gone to sell at Sammy's drug
20 point in Jefferson.
21       And then when he came back, that he escaped from
22 over there because of other cases in which he was charged,
23 so my brother and I give him a chance.
24 Q    A chance to do what?
25 A    To sell. I myself gave him one half of one eighth and

Exhibit F

```
1   then my brother kept dealing with him and then Sammy.

2   Q    And where was he selling?

3   A    Cito? At Muñecas.  Cito was told to get the nickel

4   bag point.

5   Q    What about Querido?  Who's Querido?

6   A    Querido was another pusher for Sammy.

7   Q    And how long have you known him?

8   A    Also for almost 18 years, all the time I've been in

9   Aguadilla.

10  Q    And when did he start distributing narcotics within

11  Muñecas?

12  A    About '95.

13  Q    Is that when you were a runner for Sammy?

14  A    Yes, that is so.

15  Q    How about Abraham el Chiquito?  How long have you

16  known Abraham el Chiquito?

17  A    About eight years.

18  Q    And how do you know him?

19  A    Well, I was a runner along with Alex el Teso and

20  my brother and we would give all of them a job, him a

21  job.

22  Q    When you refer to these individual, in your previous

23  testimony you referred to them as guys you knew a little,

24  but you actually have known these people for a very long

25  time, is that correct?
```

Exhibit G

```
COMSU  542*22  *         SENTENCE MONITORING          *     09-14-2006
PAGE 001 OF 001 *          GOOD TIME DATA             *     09:57:45
                         AS OF  09-14-2006

REGNO...: 18341-069   NAME: SALCEDO-PENA, HERMES
ARS 1...: COM A-DES                                  PLRA
COMPUTATION NUMBER..: 010              FUNC..: PRT    ACT DT:
LAST UPDATED: DATE.: 04-02-2002        FACL..: COM    CALC: AUTOMATIC
UNIT................: B 1-2            QUARTERS............: B03-082U
DATE COMP BEGINS....: 08-28-2001       COMP STATUS.........: COMPLETE
TOTAL JAIL CREDIT...: 0                TOTAL INOP TIME.....: 0
CURRENT REL DT......: 12-01-2019 SUN   EXPIRES FULL TERM DT: 08-27-2020
PROJ SATISFACT DT...: 03-17-2018 SAT   PROJ SATISF METHOD..: GCT REL
ACTUAL SATISFACT DT.:                  ACTUAL SATISF METHOD:
DAYS REMAINING......:                  FINAL PUBLC LAW DAYS:

------------------------------GOOD CONDUCT TIME AMOUNTS------------------------

                          MAX POSSIBLE TO    ACTUAL TOTALS    VESTED   VESTED
   START        STOP
   DATE         DATE      DIS      FFT      DIS      FFT      AMOUNT   DATE
 08-28-2001  08-27-2002    54       54
 08-28-2002  08-27-2003    54      108
 08-28-2003  08-27-2004    54      162
 08-28-2004  08-27-2005    54      216
 08-28-2005  08-27-2006    54      270
 08-28-2006  08-27-2007    54
 08-28-2007  08-27-2008    54
 08-28-2008  08-27-2009    54
 08-28-2009  08-27-2010    54
 08-28-2010  08-27-2011    54
 08-28-2011  08-27-2012    54
 08-28-2012  08-27-2013    54
 08-28-2013  08-27-2014    54
 08-28-2014  08-27-2015    54
 08-28-2015  08-27-2016    54
 08-28-2016  08-27-2017    54
 08-28-2017  03-17-2018    30

         TOTAL EARNED AMOUNT...........................................:   270
         TOTAL EARNED AND PROJECTED AMOUNT.............................:   894




G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

Exhibit G

November 1, 2005     GUIDELINES MANUAL     §5G1.3

(III) a sentence of 100 months on the 18 U.S.C. § 113(a)(3) count. The sentence on each count is imposed to run consecutively to the other counts.

<u>Historical Note</u>: Effective November 1, 1987. Amended effective November 1, 1989 (<u>see</u> Appendix C, amendments 287 and 288); November 1, 1994 (<u>see</u> Appendix C, amendment 507); November 1, 1998 (<u>see</u> Appendix C, amendment 579); November 1, 2000 (<u>see</u> Appendix C, amendment 598); November 1, 2002 (<u>see</u> Appendix C, amendment 642); November 1, 2004 (<u>see</u> Appendix C, amendment 674); November 1, 2005 (<u>see</u> Appendix C, amendments 677 and 680).

§5G1.3.    <u>Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment</u>

     (a)    If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

     (b)    If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

         (1)    the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

         (2)    the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

     (c)    (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

<i>Commentary</i>

<u>Application Notes</u>:

1.    <u>Consecutive Sentence - Subsection (a) Cases</u>. Under subsection (a), the court shall impose a consecutive sentence when the instant offense was committed while the defendant was serving an undischarged term of imprisonment or after sentencing for, but before commencing service of, such term of imprisonment.

Exhibit H

2.  *Application of Subsection (b).*—

    (A) *In General.*—Subsection (b) applies in cases in which all of the prior offense (i) is relevant conduct to the instant offense under the provisions of subsection (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct); and (ii) has resulted in an increase in the Chapter Two or Three offense level for the instant offense. Cases in which only part of the prior offense is relevant conduct to the instant offense are covered under subsection (c).

    (B) *Inapplicability of Subsection (b).*—Subsection (b) does not apply in cases in which the prior offense increased the Chapter Two or Three offense level for the instant offense but was not relevant conduct to the instant offense under §1B1.3(a)(1), (a)(2), or (a)(3) (e.g., the prior offense is an aggravated felony for which the defendant received an increase under §2L1.2 (Unlawfully Entering or Remaining in the United States), or the prior offense was a crime of violence for which the defendant received an increased base offense level under §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition)).

    (C) *Imposition of Sentence.*—If subsection (b) applies, and the court adjusts the sentence for a period of time already served, the court should note on the Judgement in a Criminal Case Order (i) the applicable subsection (e.g., §5G1.3(b)); (ii) the amount of time by which the sentence is being adjusted; (iii) the undischarged term of imprisonment for which the adjustment is being given; and (iv) that the sentence imposed is a sentence reduction pursuant to §5G1.3(b) for a period of imprisonment that will not be credited by the Bureau of Prisons.

    (D) *Example.*—The following is an example in which subsection (b) applies and an adjustment to the sentence is appropriate:

    The defendant is convicted of a federal offense charging the sale of 40 grams of cocaine. Under §1B1.3, the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court. The defendant received a nine-month sentence of imprisonment for the state offense and has served six months on that sentence at the time of sentencing on the instant federal offense. The guideline range applicable to the defendant is 12-18 months (Chapter Two offense level of level 16 for sale of 55 grams of cocaine; 3 level reduction for acceptance of responsibility; final offense level of level 13; Criminal History Category I). The court determines that a sentence of 13 months provides the appropriate total punishment. Because the defendant has already served six months on the related state charge as of the date of sentencing on the instant federal offense, a sentence of seven months, imposed to run concurrently with the three months remaining on the defendant's state sentence, achieves this result.

3.  *Application of Subsection (c).*—

    (A) *In General.*—Under subsection (c), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term

Case 3:99-cr-00306-PG    Document 279-2    Filed 01/19/2007    Page 17 of 18

*of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:*

(i) *the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));*

(ii) *the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;*

(iii) *the time served on the undischarged sentence and the time likely to be served before release;*

(iv) *the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and*

(v) *any other circumstance relevant to the determination of an appropriate sentence for the instant offense.*

(B) <u>Partially Concurrent Sentence.</u>—*In some cases under subsection (c), a partially concurrent sentence may achieve most appropriately the desired result. To impose a partially concurrent sentence, the court may provide in the Judgment in a Criminal Case Order that the sentence for the instant offense shall commence on the earlier of (i) when the defendant is released from the prior undischarged sentence; or (ii) on a specified date. This order provides for a fully consecutive sentence if the defendant is released on the undischarged term of imprisonment on or before the date specified in the order, and a partially concurrent sentence if the defendant is not released on the undischarged term of imprisonment by that date.*

(C) <u>Undischarged Terms of Imprisonment Resulting from Revocations of Probation, Parole or Supervised Release.</u>—*Subsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. Consistent with the policy set forth in Application Note 4 and subsection (f) of §7B1.3 (Revocation of Probation or Supervised Release), the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.*

(D) <u>Complex Situations.</u>—*Occasionally, the court may be faced with a complex case in which a defendant may be subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules. In such a case, the court may exercise its discretion in accordance with subsection (c) to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense.*

(E) <u>Downward Departure.</u>—*Unlike subsection (b), subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment*

*already served on the undischarged term of imprisonment. However, in an extraordinary case involving an undischarged term of imprisonment under subsection (c), it may be appropriate for the court to downwardly depart. This may occur, for example, in a case in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within the relevant conduct for the instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings. Nevertheless, it is intended that a departure pursuant to this application note result in a sentence that ensures a reasonable incremental punishment for the instant offense of conviction.*

*To avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit for time served under certain circumstances, the Commission recommends that any downward departure under this application note be clearly stated on the Judgment in a Criminal Case Order as a downward departure pursuant to §5G1.3(c), rather than as a credit for time served.*

4.  <u>Downward Departure Provision</u>.—*In the case of a discharged term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. See §5K2.23 (Discharged Terms of Imprisonment).*

<u>Background</u>: *In a case in which a defendant is subject to an undischarged sentence of imprisonment, the court generally has authority to impose an imprisonment sentence on the current offense to run concurrently with or consecutively to the prior undischarged term. 18 U.S.C. § 3584(a). Exercise of that authority, however, is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission.*

<u>Historical Note</u>: Effective November 1, 1987. Amended effective November 1, 1989 (<u>see</u> Appendix C, amendment 289); November 1, 1991 (<u>see</u> Appendix C, amendment 385); November 1, 1992 (<u>see</u> Appendix C, amendment 465); November 1, 1993 (<u>see</u> Appendix C, amendment 494); November 1, 1995 (<u>see</u> Appendix C, amendment 535); November 1, 2002 (<u>see</u> Appendix C, amendment 645); November 1, 2003 (<u>see</u> Appendix C, amendment 660).